# ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAY 2 7 2009

JAMES N. HATTEN, Clerk
By:
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| DIPLOMAT CONSTRUCTION, INC., | ) ) ) | |
| Plaintiff, | ) ) | **-RLV** |
| v. | ) ) ) | CIVIL ACTION NO. **1:09-CV-1419** |
| THE STATE BANK OF TEXAS, | ) ) | |
| Defendant. | ) ) ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff Diplomat Construction, Inc. and hereby files its Complaint against Defendant The State Bank of Texas, respectfully showing the Court as follows:

### Parties, Jurisdiction and Venue

1.

Plaintiff Diplomat Construction, Inc. is an Alabama corporation registered to conduct business in the State of Georgia.

Case 1:09-cv-01449-RLV Document 1 Filed 05/27/09 Page 2 of 16

2.

Defendant The State Bank of Texas is a banking corporation organized and existing under the laws of the State of Texas. Defendant may be served with process through its President and Chief Executive Officer, Chan Patel, at 605 West Airport Freeway, Irving, Texas 75060.

3.

This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a), because the amount in controversy, exclusive of interest, exceeds $75,000.00 and this dispute is between citizens of different states and pursuant to 28 U.S.C. § 1334, because this action is related to Plaintiff's Chapter 11 bankruptcy case filed in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, on April 3, 2009, Case No. 09-68613 (the "Bankruptcy Case").

4.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) based upon the fact that a substantial part of the events giving rise to the claim occurred in Atlanta, Georgia. Venue is also proper in this Court pursuant to 28 U.S.C. § 1409 because this action is related to Plaintiff's Bankruptcy Case.

## Factual Background

### 5.

Plaintiff entered into a Note with Integrity Bank ("Integrity") on January 16, 2002 (the "Note"), pursuant to which Plaintiff agreed to pay Integrity Ten Million Five Hundred Thousand ($10,500,000.00) Dollars, secured by a Red Roof Inn hotel property located at 1200 Virginia Avenue, College Park, Georgia 30344 (the "Property"). Integrity sold participations in the Note to other banks, after which it remained the lead bank to service the Note, even though it retained only a Forty-Nine (49%) Percent interest in the Note.

### 6.

The Federal Deposit Insurance Corporation ("FDIC") ultimately assumed, as Receiver, Integrity's interest in the Note.

### 7.

The FDIC subsequently sought bids on Integrity's interest in the Note, through its loan sale advisor, DebtX.

### 8.

At the time the FDIC assumed Integrity's interest in the Note, the balance on the Note was approximately Eight Million Nine Hundred Thousand ($8,900,000.00) Dollars.

Case 1:09-cv-01449-RLV Document 1 Filed 05/27/09 Page 4 of 16

9.

Plaintiff believed that it would be able to purchase Integrity's interest in the Note for Two Million Four Hundred Thousand ($2,400,000.00) Dollars.

10.

Accordingly, on November 24, 2008, Plaintiff's Chief Executive Officer, R.C. Patel, contacted Defendant's Founder, Chairman, President and Chief Executive Officer, Chan Patel, to discuss obtaining the financing necessary for Plaintiff to place a bid for Two Million Four Hundred Thousand ($2,400,000.00) Dollars for the purchase of Integrity's interest in the Note. R.C. Patel provided certain of Plaintiff's confidential financial and business information to Chan Patel in order for Defendant to process the loan application.

11.

At all times relevant to this matter, Chan Patel was acting as an agent of Defendant.

12.

Plaintiff already had an existing contractual relationship with Defendant as a banking customer of Defendant.

13.

During the November 24, 2008 conversation, R.C. Patel asked Chan Patel if

Defendant had all of the necessary confidential financial and business information it needed in order to process Plaintiff's loan application.

14.

Chan Patel confirmed that, based upon the existing banking relationship that existed between Plaintiff and Defendant, Defendant had all of the information that it required regarding Plaintiff, but requested some additional information regarding the Note itself.

15.

During the November 24, 2008 conversation, Chan Patel informed Plaintiff that Plaintiff's interest rate would be eleven (11%) percent, which R.C. Patel indicated was acceptable.

16.

During the November 24, 2008 conversation, R.C. Patel informed Chan Patel that Plaintiff had received approval to convert the Red Roof Inn into a Holiday Inn Express, information which was unknown to the public and which significantly increased the potential value of the Property.

17.

Shortly after the November 24, 2008 conversation, R.C. Patel sent via e-mail to Chan Patel the additional information regarding the Note that Chan Patel had

requested.

18.

In that November 24, 2008 e-mail, R.C. Patel reiterated that the remaining balance on the Note was Eight Million Nine Hundred Thousand ($8,900,000.00) Dollars and that Plaintiff would be able to purchase Integrity's interest in the Note for Two Million Four Hundred Thousand ($2,400,000.00) Dollars, the amount it was seeking in financing from Defendant.

19.

R.C. Patel also indicated in his November 24, 2008 e-mail to Chan Patel that Plaintiff needed a quick response as to whether or not Defendant would extend financing, given the fact that Plaintiff would have to submit its bid to DebtX by no later than December 9, 2008.

20.

At no time during their conversation on November 24, 2008 did Chan Patel indicate that Defendant had any prior knowledge of the Property, the Note, DebtX, or the sale of any participation in the Note by DebtX.

21.

Two days after their conversation, on November 26, 2008, R.C. Patel sent Chan Patel a second e-mail, copying Defendant's Director, Vice-President and

Case 1:09-cv-01449-RLV Document 1 Filed 05/27/09 Page 7 of 16

Chief Lending Officer, Sushil Patel, inquiring as to the status of Plaintiff's loan application.

22.

That same morning, Chan Patel replied to R.C. Patel's November 26, 2008 e-mail, informing Plaintiff that Defendant was not sure that it could extend Plaintiff the requested financing and that Plaintiff should proceed with alternative sources of financing in order to obtain its loan.

23.

Plaintiff ultimately secured alternative financing and timely placed its bid of Two Million Four Hundred ($2,400,000.00) Dollars for Integrity's interest in the Note.

24.

On December 11, 2008, DebtX informed Plaintiff that its bid for Integrity's interest in the Note was unsuccessful because Plaintiff had been outbid by Defendant's bid of Two Million Four Hundred and Twenty Thousand ($2,420,000.00) Dollars.

25.

On December 29, 2008, Plaintiff received correspondence from the FDIC, informing Plaintiff that, effective December 22, 2008, Integrity's interest in the

Note had been sold to Defendant and the servicing of the Note had been transferred to Defendant as the new lead bank on the Note. That same correspondence indicated that Plaintiff's contact with respect to future payments on the Note was Sushil Patel.

26.

On January 5, 2009, Premier Bank ("Premier") contacted Plaintiff, indicating that it had been designated as the lead bank, rather than Defendant, and that it would be servicing the Note.

27.

On January 20, 2009, Plaintiff received correspondence from an attorney representing Premier, demanding immediate payment on the Note and indicating that a foreclosure action on the Property would be initiated in February of 2009 for a March 2009 foreclosure.

28.

Subsequent to its receipt of the notice of foreclosure action, Plaintiff entered into negotiations with Premier, as the lead bank, to avoid the foreclosure action.

29.

During those negotiations, Plaintiff learned that after Defendant had obtained Integrity's interest in the Note by surreptitiously outbidding Plaintiff by

Twenty Thousand ($20,000.00) Dollars, Defendant subsequently induced Premier to act as the lead bank on the Note and initiate the foreclosure action against Plaintiff, in an attempt to conceal its improper and illegal conduct in using confidential information from Plaintiff in order to obtain Integrity's interest in the Note.

### Count I
### (Unjust Enrichment)

30.

Plaintiff hereby incorporates by reference Paragraphs 1 through 29 of its Complaint as if fully stated herein verbatim.

31.

Defendant obtained certain confidential financial and business information from Plaintiff during the course of Plaintiff's application for a loan from Defendant.

32.

Defendant knew the value of the information provided by Plaintiff.

33.

Through the use of the information provided by Plaintiff, Defendant obtained a financial advantage belonging to Plaintiff and was unjustly enriched

thereby.

34.

As a result of Defendant's unjust enrichment, Plaintiff has been damaged, in an amount to be proven at trial.

## Count II
## (Fraud)

35.

Plaintiff hereby incorporates by reference Paragraphs 1 through 34 of its Complaint as if fully stated herein verbatim.

36.

Plaintiff provided certain confidential financial and business information to Defendant, including the bid price by which Plaintiff believed it could successfully purchase Integrity's interest in the Note.

37.

Rather than use the information provided by Plaintiff to establish terms for the financing of the loan requested by Plaintiff, Defendant usurped Plaintiff's information and used it to its own benefit.

38.

Defendant knowingly misrepresented to Plaintiff that it was unsure if it

could finance the Two Million Four Hundred Thousand ($2,400,000.00) Dollar loan to Plaintiff and knowingly concealed from Plaintiff that the reason Defendant would not provide the requested financing to Plaintiff was because it intended to purchase Integrity's interest in the Note itself, by outbidding Plaintiff with a bid which minimally exceeded the amount Defendant knew Plaintiff intended to bid.

39.

Relying on Defendant's misrepresentations and omissions, Plaintiff sought and obtained alternative financing in the amount of only Two Million Four Hundred Thousand ($2,400,000.00) Dollars, the amount that it had previously disclosed to Defendant that it intended to bid.

40.

Defendant, improperly using the information obtained from Plaintiff regarding the amount of its bid, submitted a bid that was only Twenty Thousand ($20,000.00) Dollars (or 0.08%) higher than Plaintiff's bid, thereby assuring itself of being the highest bidder, but only by a minimal amount.

41.

As a result of Defendant's fraudulent actions, Plaintiff has been damaged, in an amount to be proven at trial. Plaintiff is further entitled to an award of punitive damages, in an amount to be determined by the enlightened conscience of the jury.

- 11 -

Case 1:09-cv-01419-RLV Document 1 Filed 05/27/09 Page 12 of 16

## Count III
### (Misappropriation of a Trade Secret)

42.

Plaintiff hereby incorporates by reference Paragraphs 1 through 41 of its Complaint as if fully stated herein verbatim.

43.

Plaintiff provided certain confidential financial and business information to Defendant, which was not commonly known by or available to the public.

44.

The information provided by Plaintiff derived economic value from not being generally known to and not being readily ascertainable by proper means by other persons who could obtain economic value from its disclosure or use.

45.

Plaintiff employed reasonable efforts, under the circumstances, to maintain the secrecy of its information and only disclosed it to Defendant, with whom it had an existing banking relationship, for the purpose of processing a loan application.

46.

Defendant misappropriated Plaintiff's information by using it for its own benefit, without Plaintiff's consent, with the knowledge that such information was

only acquired by Defendant for the exclusive purpose of processing a loan application and should have been kept secret.

47.

As a result of Defendant's misappropriation, Plaintiff has been damaged, in an amount to be proven at trial.

### Count IV
### (Breach of Implied Duty of Good Faith and Fair Dealing)

48.

Plaintiff hereby incorporates by reference Paragraphs 1 through 47 of its Complaint as if fully stated herein verbatim.

49.

Plaintiff had an existing contractual relationship with Defendant as a banking customer.

50.

Pursuant to that contractual relationship, Defendant was bound by an implied duty of good faith and fair dealing to Plaintiff.

51.

Plaintiff attempted to amend, alter or extend its existing contractual relationship with Defendant by seeking additional financing.

Case 1:09-cv-01419-RLV Document 1 Filed 05/27/09 Page 14 of 16

52.

Plaintiff provided certain confidential financial and business information in its attempts to obtain such financing from Defendant.

53.

Defendant breached its duty of good faith and fair dealing to Plaintiff by usurping Plaintiff's information and using it to its own benefit.

54.

As a result of Defendant's breach, Plaintiff has been damaged, in an amount to be proven at trial.

## Count IV
### (Attorneys' Fees)

55.

Plaintiff hereby incorporates by reference Paragraphs 1 through 54 of its Complaint as if fully stated herein verbatim.

56.

Defendant has acted in bad faith, has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense.

57.

Plaintiff is entitled to recover his litigation expenses, including its reasonable

attorneys' fees and costs pursuant to O.C.G.A. § 13-6-11, in an amount to be proven at trial.

WHEREFORE, Plaintiff respectfully prays for the following relief:

(a)    A trial by jury;

(b)    Judgment in its favor and against Defendant as to the entirety of the Complaint;

(c)    An award of its damages in an amount to be proven at trial, including an award of punitive damages, in an amount to be determined by the enlightened conscience of the jury, and without regard to any statutory cap, given the fact that Defendant acted with the specific intention to cause Plaintiff harm;

(d)    An award of its costs and reasonable attorneys' fees incurred in connection with this action; and

(e)    Such other and further legal and equitable relief as the Court deems just and proper.

Dated: May **27th**, 2009.


By: _____
Mark G. Trigg
Georgia Bar No. 716295
triggm@gtlaw.com
Ryan C. Grelecki
Georgia Bar No. 245068
greleckir@gtlaw.com


**GREENBERG TRAURIG, LLP**                    Counsel for Plaintiff
Suite 400 – The Forum
3290 Northside Parkway
Atlanta, Georgia  30327
Tel. (678) 553-2100
Fax. (678) 553-2212


*ATL 17,148,988v1 5-27-09 118384.010100*

- 16 -