IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| DIPLOMAT CONSTRUCTION, INC., | : | CASE NO. 09-68613-MGD |
| | : | |
| Debtor. | : | |

**TRUSTEE'S MOTION FOR AUTHORIZATION TO SETTLE AND
COMPROMISE CLAIMS AGAINST STATE BANK OF TEXAS**

COMES NOW the Trustee in the above-captioned case, Paul H. Anderson, Jr. ("the Movant"), and represents to the Court as follows:

1.  The assets of the bankruptcy estate of Diplomat Construction, Inc. ("the Debtor") include claims alleged against State Bank of Texas ("SBT"), including those for recovery of damages for alleged unjust enrichment, fraud, misappropriation of a trade secret, breach of implied duty of good faith and fair dealing and attorneys' fees ("the Claims"). The Claims are described more fully in the Recitals of Exhibit "A" attached hereto and are currently pending before the Court in Adversary Proceeding No. 10-6597, captioned *Diplomat Construction, Inc, Plaintiff. v. State Bank of Texas*, Defendant.

2.  Movant and SBT have agreed to settle and compromise the Claims on terms set forth in the "Settlement Agreement" a copy of which is attached hereto as Exhibit "A." Its essential terms are that in exchange for its payment of the sum of Forty Thousand and No/100 ($40,000.00) Dollars to Movant, Movant will release SBT from the Claims, will assign them to it and will further release SBT from all other claims which the estate or the Debtor may have against it except for preference claims.

4. Movant believes that the proposed settlement and compromise is reasonable, will avoid the trouble, expense and delay of continued litigation, and will otherwise be in the best interest of the estate.

WHEREFORE, Movant prays that the proposed settlement and compromise be approved after notice and hearing as required by law.

                                                                           /s/
                                        Paul H. Anderson Jr.
                                        Trustee in Bankruptcy
                                        Georgia Bar No. 017825

Two Piedmont Center, Suite 315
3565 Piedmont Road, N.E.
Atlanta, Georgia 30305
404/495-5380

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Agreement") is made and entered into this __ day of February, 2011, between **PAUL H. ANDERSON, JR.**, in his capacity as Chapter 7 Trustee (together with his successors in such capacity, the "Trustee") for Diplomat Construction, Inc. ("Diplomat" or the "Debtor"), and **STATE BANK OF TEXAS**, a banking corporation organized and existing under the laws of the state of Texas (together with its successors and assigns, "SBT").

## RECITALS

On or about January 16, 2002, Diplomat made that certain Note dated January 16, 2002 (as at any time amended, modified, restated or supplemented, the "Note"), to the order of Integrity Bank ("Integrity Bank"), in the original principal amount of $10,500,000, evidencing a term loan made by Integrity Bank to Diplomat (the "Term Loan").

In order to secure the indebtedness owing to Integrity Bank under the Note and the other Loan Documents (as defined below), each of Mukesh C. Patel ("M.C. Patel") and Rajesh C. Patel ("R.C. Patel"; M.C. Patel and R.C. Patel are collectively referred to herein as the "Guarantors" and individually as a "Guarantor") executed guaranty agreements (collectively, the "Guaranties") in favor of Integrity Bank pursuant to which each Guarantor guaranteed performance by Diplomat of all the terms of the Note and the other Loan Documents (as defined below) and payment of all liabilities, obligations and indebtedness at any time owing by Diplomat under the Note and the other Loan Documents.

In order to further secure the indebtedness owing to Integrity Bank under the Note and the other Loan Documents, Diplomat granted to Integrity Bank security interests in, liens upon and security title to all or substantially all of Diplomat's assets (collectively, and as more particularly described in the Loan Documents, the "Collateral") pursuant to that certain (i) Deed to Secure Debt and Security Agreement dated January 16, 2002, between Diplomat and Integrity Bank, recorded on January 25, 2002, at Deed Book 31728, Page 25, *et seq.*, Records of Fulton County, Georgia (as at any time amended, modified, restated or supplemented, the "Security Deed"); (ii) Security Agreement dated January 16, 2002, between Diplomat and Integrity Bank (as at any time amended, modified, restated or supplemented, the "Security Agreement"), pursuant to which Diplomat granted Integrity Bank a security interest and lien upon all or substantially all of Diplomat's personal property; (iii) Assignment of Leases and Rents dated January 16, 2002, between Diplomat and Integrity Bank, recorded on January 25, 2002, at Deed Book 31728, Page 90, *et seq.*, Records of Fulton County, Georgia (as at any time amended, modified, restated or supplemented, the "Assignment of Leases"); (iv) Collateral Assignment to Secure Debt dated January 16, 2002, from Diplomat in favor of Integrity Bank, recorded on January 25, 2002, at Deed Book 31728, Page 53, *et seq.*, Records of Fulton County, Georgia (as at any time amended, modified, restated or supplemented, the "Collateral Assignment"); and (v) Assignment of Contracts, Warranties, Licenses, Permits and Plans dated January 16, 2002, between Diplomat and Integrity Bank (as at any time amended, modified, restated or supplemented, the "Assignment of Contracts"; and together with the Note, Guaranties, Security

**EXHIBIT "A"**

1789469_2

Deed, Security Agreement, Assignment of Leases, Collateral Assignment and all other documents, instruments and agreements executed in connection therewith, as at any time amended, modified, restated or supplemented, the "Loan Documents").

On or about August 29, 2008, Integrity Bank was placed into receivership and the Federal Deposit Insurance Corporation (the "FDIC") was appointed as the receiver. Acting on behalf of Integrity Bank and pursuant to that certain Loan Sale Agreement dated December 22, 2008 (as at any time amended, modified, restated or supplemented, the "LSA"), the FDIC sold, transferred and assigned to SBT all of Integrity Bank's right, title and interest in and to the Loan Documents; the liabilities, obligations and indebtedness of Diplomat arising thereunder; and all security interests and liens and security title securing the performance and payment of such liabilities, obligations and indebtedness.

On or about April 3, 2009, the Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), initiating the matter styled *In re Diplomat Construction, Inc.*, Case No. 09-68613 (the "Bankruptcy Case"), United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court").

On or about May 27, 2009, the Debtor filed a Complaint against SBT initiating the matter styled *Diplomat Construction, Inc. v. The State Bank of Texas*, Case No. 1:09-CV-1419-RLV, United States District Court for the Northern District of Georgia (the "District Court"), which matter was referred by the District Court to the Bankruptcy Court on October 5, 2010, and is now pending under Bankruptcy Court Adversary Proceeding Case No. 10-6597 (the "Diplomat Lawsuit").

In the Diplomat Lawsuit, the Debtor has asserted claims against SBT arising out of and challenging the lawfulness of SBT's purchase of the Loan Documents from the FDIC. These claims include claims for unjust enrichment, fraud, misappropriation of trade secrets under the Georgia Trade Secrets Act, breach of implied duty of good faith and fair dealing and attorneys' fees (collectively with any and all claims arising out of or relating to SBT's purchase or ownership of the Loan Documents, the "Released Claims").

The parties wish to avoid the risks and expenses attendant to the disputes between them, without anyone admitting fault, liability or wrongdoing, and to settle, once and forever, the rights, claims and demands which one has against or may have against the other as set forth in this Agreement.

NOW, THEREFORE, in consideration of the recitals, mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound, agree as follows:

1. **Definitions.** In addition to the terms defined elsewhere in the Agreement, any capitalized terms shall have the meanings ascribed to them as set forth below:

Approval Order shall mean a Final Order, in substantially the form attached hereto as Exhibit A, entered by the Bankruptcy Court in the Bankruptcy Case approving this Agreement.

Bankruptcy Rules shall mean the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or as hereafter amended to the extent such amendments apply to the Bankruptcy Case.

Final Order shall mean an order of a court after which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or any other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the parties or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any comparable rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

Claim shall have the meaning set forth in Section 101(5) of the Bankruptcy Code.

Effective Date shall mean the date on which the condition to this Agreement set forth in Section 2 hereto is satisfied.

Person shall mean any individual, partnership, corporation, limited liability company, limited liability partnership, joint venture, trust, or unincorporated organization or association, any "doing business as" entity, any other form of business or commercial entity, or a government or any governmental agency or political subdivision.

Stipulation of Dismissal shall mean the Stipulation of Voluntary Dismissal in substantially the form attached hereto as Exhibit B.

    2.    **Condition to Settlement**. Except as otherwise stated herein, notwithstanding the parties' execution and delivery of this Agreement, the Agreement shall not be effective and shall not be binding upon any of the parties unless and until the Approval Order is entered and becomes a Final Order.

3. **Settlement Payment from SBT**. Within ten (10) days after the Effective Date, SBT agrees to deliver to the Trustee a cashier's check, payable to the order of the Debtor, in the amount of $40,000.

4. **Dismissal of Diplomat Lawsuit**. The Trustee will file a fully executed copy of the Stipulation of Dismissal in the Diplomat Lawsuit after he confirms with his bank that the check for the settlement payment has been paid.

5. **Release by the Trustee and the Debtor**. As a material inducement to SBT entering into this Agreement, on the Effective Date, the Trustee, on behalf of himself, the Debtor, and each of his or its agents, representatives, successors and assigns and all other Persons claiming by, through or under the Trustee or the Debtor, hereby **REMISES, RELEASES, ACQUITS AND FOREVER DISCHARGES** SBT and all agents, representatives, officers, directors, employees, attorneys, co-participants, successors and assigns of SBT (collectively, the "SBT Released Persons") of and from all Claims which the Trustee or the Debtor ever had, now have, or claim to have, either directly or indirectly, in whole or in part, against any of the SBT Released Persons, including, without limitation, the Released Claims, but not including any preference claim(s) the Trustee may assert, and the Trustee and the Debtor hereby covenant that they will not sue any of the SBT Released Persons for, or raise in any way against any of the SBT Released Persons, any such Claims, except preference claim(s).

6. **Assignment of Claims**. As a material inducement to SBT entering into this Agreement, on the Effective Date, the Trustee, on behalf of himself and the Debtor, hereby assigns and transfers to SBT all of the Debtor's right, title and interest in and to the Released Claims.

7. **Court Approval of Agreement**. The Trustee shall file a motion in the Bankruptcy Case seeking approval of this Agreement promptly, but in no event later than ten (10) days from the date hereof. If for any reason the Bankruptcy Court does not approve this Agreement, the parties agree that discovery in the Diplomat Lawsuit has closed and that they will jointly seek consent to a thirty (30) day period for filing of dispositive motions.

8. **Authority**. Each of the parties represents and warrants to the others that he or it has full power and authority to enter into this Agreement, subject to approval of the Bankruptcy Court, and that the Agreement, once executed and delivered by each party and approved by a Final Order of the Bankruptcy Court, will be a valid and binding obligation of that party enforceable against him or it in accordance with the Agreement's terms.

9. **No Admission of Liability**. This Agreement shall not in any way be construed as an admission by any party of any acts of misconduct whatsoever against another party or any other Person, and all parties specifically disclaim any liability to another party or any other Person, except as otherwise stated herein. Neither this Agreement nor any action taken pursuant to this Agreement shall be offered or received in evidence in any action or proceeding as an admission of liability or wrongdoing of any nature on the part of any party. Neither this Agreement nor any action taken pursuant hereto shall be construed in any way to be a waiver by any party of any legal or constitutional right or privilege except as stated in this Agreement.

10. **Certain Representations and Warranties.** Each of the parties represents and warrants to the other, as an inducement for the other to enter into this Agreement, that:

    a.    Such party has read and understands all of the terms and conditions set forth in this Agreement;

    b.    Such party has had the opportunity to consult with legal counsel of his choosing in deciding to execute this Agreement;

    c.    Such party, without promise of benefit other than as set forth herein, is voluntarily entering into this Agreement;

    d.    There is good and valid consideration to support such party's entering into this Agreement and to bind such party by the terms and conditions of this Agreement;

    e.    Such party was not coerced, threatened or otherwise forced to sign this Agreement, and his or its signature appearing hereinafter is voluntary and genuine and was duly and validly authorized and given; and

    f.    In deciding to enter into this Agreement, such party has conducted his or its own investigation and due diligence with respect to the Released Claims and has made his or its decision based upon such investigation and due diligence and, except as expressly stated herein, has not relied upon or been induced by any statement or representation made by the other party, including, without limitation, any statement or representation set forth in the Recitals to this Agreement.

11. **Parties to Bear Own Costs.** Each party to this Agreement shall bear his or its own costs (including attorneys' fees) incurred in connection with the negotiation, preparation and execution of this Agreement and any other agreements or instruments executed in accordance with the terms of this Agreement.

12. **Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement, and the signature pages from any counterpart may be appended to any other counterpart to assemble fully-executed counterparts. Counterparts of this Agreement also may be exchanged via electronic facsimile machines, and an electronic facsimile of any party's signature shall be deemed to be an original signature for all purposes.

13. **Entire Agreement.** This Agreement sets forth all of the promises, covenants, agreements, conditions and understandings between the parties with respect to the subject matter hereof and supercedes all prior and contemporaneous agreements, understandings, inducements or conditions, express or implied. Each party specifically warrants that this Agreement is executed without reliance upon any statement or representation by any other party hereto, except as expressly stated herein.

14. **Amendment.** The terms of this Agreement shall not be altered, amended, modified or otherwise changed in any respect except by a writing duly executed by all the parties hereto and approved, if necessary or appropriate, by the Bankruptcy Court.

15. **Severability.** Wherever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law. If any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

16. **Binding Agreement.** This Agreement shall be binding upon the parties, and their respective representatives, successors and assigns, and shall similarly inure to the benefit of their respective representatives, successors and assigns.

17. **No Third-Party Beneficiaries.** No Person other than the parties hereto and their respective successors, assigns and representatives is intended to be a beneficiary of this Agreement.

18. **Construction.** Should any provision of this Agreement require interpretation, the parties agree that the judicial body or arbitration forum interpreting or construing such provision shall not apply any assumption that the terms of this Agreement shall be more strictly construed against any party because of the rule of construction that an instrument is to be construed more strictly against the drafting party, each party hereby acknowledging and agreeing that all parties and their respective agents have participated in the preparation of this Agreement.

19. **Section Headings; References; Gender and Number.** The titles of the Sections herein have been inserted as a matter of convenience and for reference only and shall not control or affect the meaning or construction of any of the terms of the provisions herein. Whenever reference is made in this Agreement to any Section, such reference shall be deemed to apply to the specified Section of this Agreement. Words of any gender used in this Agreement shall be deemed to include the other gender or the neuter, and words in the singular shall be deemed to include the plural and the plural to include the singular when the sense requires.

20. **Governing Law.** This Agreement shall be construed under and governed by the internal laws of the State of Georgia.

*[The remainder of this page is intentionally left blank; signatures on following page.]*

IN WITNESS WHEREOF, the parties have set their hands and seals, or their appropriate officer or agent has executed this Agreement, on the date first written above.

**PAUL H. ANDERSON, JR.** in his capacity as Chapter 7 Trustee for Diplomat Construction, Inc.
("Trustee")

By: _____
Date of Execution: _____

**STATE BANK OF TEXAS**, a banking corporation organized and existing under the laws of the state of Texas
("SBT")

By: _____
Name: _____
Title: _____
Date of Execution: _____

# **EXHIBIT A**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| **DIPLOMAT CONSTRUCTION, INC.,** | ) | Case No. 09-68613-mgd |
| | ) | |
| Debtor. | ) | Judge Diehl |
| | ) | |
| **DIPLOMAT CONSTRUCTION, INC.,** | ) | Adversary Proceeding No. 10-6597 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **THE STATE BANK OF TEXAS,** | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER APPROVING SETTLEMENT AGREEMENT

This matter having come on for hearing on _____, 2011, on the motion (the "Motion") of Paul H. Anderson, Jr., in his capacity as Chapter 7 trustee (together with his successors in such capacity, the "Trustee") for Diplomat Construction, Inc. (the "Debtor"), pursuant to Bankruptcy Rule 9019(a) and Section 105 of the Bankruptcy Code, seeking approval of the proposed Settlement Agreement ("Agreement") between State Bank of Texas ("SBT") and Debtor; and sufficient notice of the proposed Agreement having been given to all parties in interest and it appearing that no other or further notice need be given; and the Court having jurisdiction to consider the Motion and the Agreement; and the Court having determined that the relief requested in the Motion is in the best interests of the bankruptcy estate, its creditors and all

- 2 -

parties in interest; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing thereof, it is hereby

ORDERED, ADJUDGED and DECREED that:

1. The Motion is GRANTED, and the Agreement is approved as being fair and reasonable and in the best interests of the Debtor's estate.

2. The Trustee's execution of the Agreement, and any other agreements, instruments or documents necessary to effectuate the settlement set forth in the Agreement, is hereby ratified, authorized and approved, and the Trustee is authorized to perform his obligations under the Agreement.

3. The Court shall retain jurisdiction to hear any disputes arising under the Agreement.

4. Notwithstanding any Federal Rule of Bankruptcy Procedure to the contrary, this Order shall be immediately effective and enforceable upon its entry.

# **EXHIBIT B**

1789469_2

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| DIPLOMAT CONSTRUCTION, INC., | Case No. 09-68613-mgd |
| Debtor. | Judge Diehl |
| | |
| DIPLOMAT CONSTRUCTION, INC., | Adversary Proceeding No. 10-6597 |
| Plaintiff, | |
| v. | |
| THE STATE BANK OF TEXAS. | |
| Defendant. | |

## STIPULATION OF DISMISSAL WITH PREJUDICE

Now come all parties to the above-captioned adversary proceeding, by and through their respective counsel, and pursuant to Bankruptcy Rule 7041(a), hereby stipulate and agree that this adversary proceeding is hereby dismissed with prejudice.

1789469_2

Respectfully submitted,

**PARKER, HUDSON, RAINER & DOBBS LLP**
Counsel for State Bank of Texas

By:/s/ *Joshua J. Lewis*
    William J. Holley, II
    Georgia Bar No. 362310
    Joshua J. Lewis
    Georgia Bar No. 303211
1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, Georgia 30303

AND

**MERRITT WATSON, LLP**
Counsel for the Trustee

By:/s/ *James R. Schulz*
    James R. Schulz
    Georgia Bar No. 630274
200 Galleria Parkway, SE
Suite 500
Atlanta, Georgia 30339
(770) 952-6550

# CERTIFICATE OF SERVICE

I, Paul H. Anderson, Jr., certify that I have served a copy of the foregoing **Trustee's Motion for Authorization to Settle and Compromise Claims Against State Bank of Texas** upon each of the following:

    Office of the United States Trustee
    Room 362 Richard B. Russell Building
    75 Spring Street, S.W.
    Atlanta, Georgia 30303

    John D. Elrod, Esquire
    Greenberg Traurig, LLP
    Suite 400
    3290 Northside Parkway
    Atlanta, GA 30327

    Diplomat Construction, Inc.
    Attn: R. C. Patel
    2100 Parklake Drive
    Atlanta, GA 30345

    James R. Schulz, Esquire
    Merritt Watson, LLP
    200 Galleria Parkway, SE
    Suite 500
    Atlanta, Georgia 30339

    Paul A. Jones, CPA
    Paul A. Jones & Co.
    750 Hammond Drive
    Building 12, Suite 310
    Atlanta, GA  30328

by depositing a copy of the same in the United States Mail in an envelope properly addressed with sufficient postage to assure delivery.

    This 16th day of February, 2011.

                                                            /s/
                                                  Paul H. Anderson, Jr.
                                                  Georgia Bar No. 017825

Two Piedmont Center, Suite 315
3565 Piedmont Road, N.E.
Atlanta, Georgia 30305
(404) 495-5380